IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | EP-23-CR-01833-DB |
| DILAN EVANNY PANO-FLORES | § | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION OPPOSING EXTENSION OF COMMITMENT AND TO DISMISS INDICTMENT

On this day, the Court considered the above-captioned case. On January 21, 2025, Defendant Dilan Evanny Pano-Flores ("Defendant") filed "Defendant's Motion Opposing Extension of Commitment and to Dismiss Indictment" ("Motion"), ECF No. 30[1]. Therein, Defendant opposed an additional mental competency restoration period under 18 U.S.C. § 4241(d) and sought dismissal of the indictment filed against him based on violations of his due process and speedy trial rights.[2] *Id.* at 1. The United States of America ("Government") filed its response in opposition[3] ("Response") on February 4, 2025. Based on the arguments raised in Defendant's Motion, and the decline in Defendant's mental competency since, the Court hereby dismisses the indictment against him. The Court will address Defendant's arguments in turn. For the foregoing reasons, Defendant's Motion is granted in part.

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the page numbers assigned by the ECF system.
[2] Pursuant to Fed. Rule of Crim. Proc. 48(b)(3) ("Rule 48(b)(3)").
[3] "Response to Defendant's Motion Opposing Extension of Commitment and to Dismiss Indictment," ECF No. 33.

## BACKGROUND

On August 15, 2023, Defendant was arrested for an attempted illegal reentry in violation of 18 U.S.C. § 1326(a). Criminal Compl. 1, ECF No. 1. Defendant allegedly applied for admission at the Paso Del Norte Port of Entry in El Paso, Texas, and did not present any identification documents but claimed to be a U.S. citizen. *Id.* at 2. Defendant's fingerprints were digitally scanned, and database records revealed he was previously removed from the United States on or about July 24, 2023. *Id.* A criminal complaint was filed on August 16, 2023. *Id.* Defendant was later charged in a one-count indictment alleging violations of 8 U.S.C. § 1326(a) and (b)(1). Indictment, ECF No. 9. If found guilty on the instant charge, Defendant would be facing a sentence within the statutory guideline[4] range of six to twelve months.[5] Pre-Plea Guideline Worksheet 6, ECF No. 34. Arraignment was set for October 5, 2023, but did not take place. *See* Order Resetting Dist. Ct. Arraignment, ECF No. 14.

On October 3, 2023, Defendant's counsel Joseph Veith ("Attorney Veith") filed an unopposed "Motion to Determine Mental Competency" under 18 U.S.C. § 4241(a) to determine Defendant's competency to stand trial. Mot. to Determine Mental Competency, ECF No. 15. This Court granted that motion on October 4, 2023. *See* Order for Mental Examination, ECF No. 16. Dr. Cynthia Rivera evaluated Defendant and submitted her report on October 17, 2023, concluding Defendant was not competent to stand trial. Psychiatric Rep. 3, ECF No. 19. On November 1, 2023, after conducting a competency hearing, this Court issued an "Order of Commitment

---

[4] Statutory guidelines are derived from the "United States Sentencing Commission Guidelines Manual 2024."

[5] This guideline range is calculated using a total offense level of eight and a criminal history category of three without the application of acceptance of responsibility. *See* Pre-Plea Guideline Worksheet 6, ECF No. 34.

2

Pursuant to 18 U.S.C. § 4241(d)" ("Order of Commitment"), ECF No. 23 thereby ordering that Defendant be committed

> to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d) to be hospitalized in a suitable facility for such a reasonable time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future, he will attain the capacity to permit the trial to proceed.

*Id.* at 1. Defendant was subsequently admitted to Federal Medical Center, Devens ("FMC Devens") on August 14, 2024 for the purpose of competency restoration and treatment. Letter from FMC Devens 1, ECF No. 26. Defendant spent 287 days[6] in pre-hospitalization criminal detention at a non-medical facility awaiting transportation to FMC Devens to begin his restoration.[7] From the date of his arrest on August 16, 2023, Defendant spent a total of 363 days in custody before he was formally committed for competency restoration. As previously mentioned, Defendant was facing a maximum guideline sentence of twelve months. *See* Pre-Plea Guideline Worksheet 6, ECF No. 34.

After the four-month treatment period expired, FMC Devens advised the Court of Defendant's progress. According to FMC Devens, Defendant "presented with psychotic symptoms consistent with delusional disorder," and had been willing to accept psychiatric treatment through the form of prescribed anti-psychotic medication. *See* Letter from FMC Devens 1, ECF No. 26. "[D]espite several increases in his medication dose as well as addition of an antidepressant medication," Defendant "continues to harbor a confused and delusional thought

---

[6] This is equivalent to nine months and thirteen days.
[7] This total is from the time of this Court's issuance of Defendant's Order of Commitment on November 1, 2023, ECF No. 23, until Defendant was *finally* admitted to FMC Devens, on August 14, 2024

process that undermines his adaptive functioning and continues to compromise his competency-related capacities." *Id.* FMC Devens then requested an additional commitment period under 18 U.S.C. § 4241(d)(2)(A) of ninety days "in order to assess whether increased dosage of his current medication or an alternative medication treatment may succeed in restoring [Defendant] to competency." *Id.* at 2.

Following the letter from FMC Devens' and request for an additional commitment period, Defendant filed the instant Motion, (1) opposing any extension of treatment, (2) moving to dismiss the indictment for due process and speedy trial violations, and (3) dismissal under Rule 48(b)(3). *See* Mot., ECF No. 30. On March 12, 2025, even though this Court did not grant the requested treatment extension, Defendant nonetheless remained at FMC Devens. As such, this Court ordered FMC Devens to submit a new report regarding the status of Defendant's competency. *See* Am. Order, ECF No. 36. On March 27, 2025, FMC Devens submitted a second report wherein they advised Defendant had been examined by staff and was determined to be able "to understand the nature and consequences of the proceedings against him and to assist properly in the defense of the claims brought against him." Second Report, ECF No. 37. After a hearing on April 30, 2025, the Court found Defendant competent to stand trial, and he was set for a plea and sentence hearing three weeks later. *See* Dkt. 41.

At the plea and sentence hearing on May 22, 2025, Attorney Veith informed the Court of present concerns regarding Defendant's competency to proceed.[8] Attorney Veith advised of Defendant's potential regression since the competency hearing on April 30, 2025, citing Defendant presently believed Defendant had "spent eight years as a federal agent in Colorado" and was a

---

[8] This Court generated a draft transcript of this hearing and will cite it herein.

United States citizen. *See* Draft Tr.[9] for May 22, 2025 Plea and Sent'g Hrg, 2 ("Draft Tr."). The Court inquired as to Defendant's mental state, and Defendant reaffirmed he owned an Olive Garden restaurant in Denver[10] and was a former law enforcement officer with the title of "Chief". *Id.* at 3–4. At that time, the Government did not take a position on Defendant's competency. *Id.* at 4 (Government's attorney stating "[a]s to his [] current state of competency, . . I'll defer to defense counsel and the Court . . . but based on the questions asked in open court that is problematic.") The Court advised the parties it would not proceed to take Defendant's plea if there was a question of Defendant's competency. *Id.* From the date of his arrest to the date of the plea hearing, Defendant had spent over 21 months[11] in the Government's custody pending resolution of his case. Based on the length of time Defendant has spent in custody, and his ongoing competency issues, the Court informed the parties it would dismiss the charges against Defendant and allow ten days to arrange treatment with the Mexican consulate. *Id.* at 6. The Court will now address its legal reasoning.

---

[9] Typically, Courts prefer to use official transcripts when citing to them in a memorandum opinion and order. However, due to the expedited nature of this Memorandum Opinion and Order, this Court will use the "Rough" or "Draft" transcript generated by this Court. At the time of this writing, neither party has requested an official transcript. Further, other courts have addressed this issue of using rough/draft transcripts vs. official transcripts. *See, e.g., United States v. Two Gen. Elec. Aircraft Engines*, 14-CV-2213, 2016 WL 6495397, at *1 n.1 (D.D.C. Nov. 2, 2016); *United States v. West*, 21 F.3d 607, 608 (5th Cir. 1994); *G&G Closed Circuit Events, LLC v. La Patrona Seafood & Cantina, LLC*, 24-CV-156-DCG, 2024 WL 4100243, at *2 n.16 (W.D. Tex. Aug. 28, 2024); *In re St. Clare*, NC-13-1507, 2014 WL 4089344, at *3 (9th Cir. Bankr. Aug. 19, 2014).

[10] In Dr. Cynthia Rivera's competency evaluation report, filed on October 17, 2023 wherein Defendant was found not competent, Defendant said he "owned an Olive Garden restaurant in Denver." Dr. Rivera's Psychiatric Rep. 3, ECF No. 19.

[11] This total is calculated using the date of arrest, August 15, 2023, and May 22, 2025, the date of the plea and sentence hearing.

## **LEGAL STANDARD**

A. Due Process and Mental Competency

Consistent with due process, "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri,* 420 U.S. 162, 171 (1975) (noting this principle was cited by Blackstone, *William Blackstone, Commentaries*). In *Jackson v. Indiana*, the Supreme Court held that "indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the [U.S. Constitution's] guarantee of due process[12]." 406 U.S. 715, 731 (1972). "[D]ue process [instead] requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* at 738. Thus, "a person charged . . . with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.*

"In 1984, Congress passed [Insanity Defense Reform Act] to . . . amend the federal commitment statute to conform with *Jackson*'s due process holding." *U.S. v. Calderon-Chavez*, 688 F.Supp.3d 472 (W.D. Tex. 2023) at 477; *see also id.* at n15 (citing to S. Rep. No. 98-225, at 236 (1983) ("[i]n accord with the Supreme Court's holding in *Jackson v. Indiana*, commitment

---

[12] *Jackson* involved a state's ability to commit an incompetent defendant indefinitely under the Fourteenth Amendment's Due Process Clause. 406 U.S. at 731. This case involves the federal government, which is restrained by the Fifth Amendment's Due Process Clause. *See* U.S. CONST. amend V. However, the Fifth Circuit determined *Jackson's* holding applies to the federal government and the states alike. *See e.g., United States v. Ceasar*, 30 F.4th 497, 502 n.3 (5th Cir. 2022) (citing *Jackson* for legal propositions pertaining to "[t]he Fifth Amendment Due Process Clause.")

6

under section 4241 [of IDRA] may only be for a reasonable period of time necessary to determine if there exists a substantial probability that the person will attain the capacity to permit the trial to go forward in the foreseeable future.") Under 18 U.S.C. § 4241(a), both the Government and the defendant may move for a hearing to determine the defendant's mental competency before continuing criminal proceedings. If the district court finds that the defendant is incompetent, it must commit him to the custody of the Attorney General for hospitalization "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id.* § 4241(d)(1). The defendant may be committed for "an additional reasonable period of time" "if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." *Id.* § 4241(d)(2)(A). At the end of the commitment period, if the defendant has not sufficiently improved, he is not subject to any additional commitment except by way of the civil commitment procedures described in 18 U.S.C. §§ 4246 and 4247. *Id.*

While section 4241(d) addresses the length of time an individual can be confined in a facility for competency restoration, it does not address the amount of time an individual can be confined in a non-medical facility awaiting transportation to a treatment facility. *See generally* 18 U.S.C. § 4241. *Id.* Despite not having clear guidance on this issue, this Court finds that even if a defendant deemed incompetent by a court and ordered to a mental health restoration facility under Section 4241, they still "cannot be held more than the reasonable period of time necessary to determine" the likelihood he will regain competency. *Jackson*, 406 U.S. at 738; *see also Calderon-Chavez* 688 F.Supp.3d at 477–478. This, in effect, does indeed limit the time the Government may

detain a defendant while he waits for a bed at a hospital. *Id.* "[T]he nature and duration of" a defendant's confinement, including pre-hospitalization delays, must "bear some reasonable relation to the purpose for which the individual is committed." *Id.*

B. Speedy Trial and Mental Competency

Aside from the due process concerns relating to continuous confinement in a mental facility for the sole purpose of competency restoration, an individual in this procedural posture retains their right to a trial. The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The Speedy Trial Act of 1974 gives effect to this right by setting deadlines within which defendants must be indicted after arrest, and within which they must be brought to trial after indictment. *See* Speedy Trial Act of 1974, 18 U.S.C. § 3161(b–c). Among these is the requirement that "in any case in which a plea of not guilty is entered," a defendant's trial must "commence within seventy days" from his indictment or initial appearance, whichever is later. *Id.* at § 3161(c)(1). This seventy-day deadline is subject to several excludable events including, but not limited to:

> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--
> (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant . . .
> (F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, *except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable.* . . .

18 U.S.C. § 3161(h). While a defendant who moves for dismissal pursuant to a Speedy Trial Act violation has the "burden of proof [in] supporting such motion," 18 U.S.C § 3162(a)(2), he

Government still has "the burden of going forward with the evidence in connection with any exclusion of time . . ." *Id.*; *see also United States v. May*, 819 F.2d 531, 533 (5th Cir. 1987) ("Because the Government alone usually knows the reason for the delay, it bears the initial burden of explaining why the violation occurred") (footnote omitted).

## ANALYSIS

Defendant's Motion raises three issues arguing (1) an extension of his competency restoration treatment should not be extended following the initial four-month period under 18 U.S.C. 4241(d), (2) Defendant's detention in a non-medical facility awaiting transportation extending over seventeen months violates his due process rights under the Fifth Amendment, and (3) the 286-day delay in admitting Defendant to a competency restoration facility following this Court's Order of Commitment violated his speedy trial rights under the Speedy Trial Act. *See* Mot. 4–6, ECF No. 30. Because this Court will dismiss the indictment based on due process violations, the Court will not discuss any extension of Defendant's mental competency restoration treatment because the issue is now moot.

    A. Defendant's Prolonged Detention Between the Order of Commitment and His Admittance to FMC Devens Violated His Due Process Rights

Defendant argues that the "Government violated his due process . . . by subjecting him to prolonged and unjustified pre-hospitalization confinement following the Court's Order of Commitment, and because his ongoing incompetence following months of treatment renders him unable to stand trial." Mot. 1, ECF No. 30. Following a competency hearing on November 1, 2023, this Court found Defendant incompetent and ordered his commitment to the custody of the Attorney General for restoration under 18 U.S.C. § 4241(d). Order of Commitment 1, ECF No. 23. Defendant was then admitted to FMC Devens on August 14, 2024 after spending over

9

nine months in the Government's custody awaiting transportation to medical competency restoration treatment. *See* Letter from FMC Devens 1, ECF No. 26. In its Response, the Government argues Defendant's due process rights were not violated because any due process violations arising from Defendant's pre-hospitalization delay are now moot, and Defendant's continued detention does not violate his due process rights. Resp. 7–9, ECF No. 33 . The Government reasons that "Defendant's case is distinguishable [from *Jackson* and *Calderon-Chavez*] in that steps have been taken under § 4241 to determine whether there is a substantial probability that Defendant will attain the capacity to permit the proceedings to proceed." *Id.* at 7.

In *Jackson*, the Supreme Court expressed that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." 406 U.S. at 738. In *Calderon-Chavez*, a court in this division determined a defendant's pre-hospitalization delay exceeding nine months after an order of commitment under Section 4241(d) was a due process violation. *Calderon-Chavez*, 688 F.Supp.3d at 479 (holding "[t]he purpose of the "pre-hospitalization commitment period . . . is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility. While *some* amount of delay undoubtedly advances that purpose, a nine-month period of inactivity does not.") (footnotes omitted)

Similarly, Defendant in this case spent over nine months awaiting transportation to receive restoration treatment at FMC Devens. This delay is undoubtedly unreasonable. First, the nature of Defendant's extended confinement here bears no reasonable relation to the reason for committing him. This Court ordered Defendant committed to the "custody of the Attorney General" for the purpose of hospitalizing him in a "suitable facility" to determine "whether there

10

is a substantial probability that in the foreseeable future he will" become competent. Order of Commitment, ECF No. 23. Keeping Defendant in a non-medical facility for over nine months without access to restoration services following his order of commitment did *nothing* to move this case forward, nor did it do anything to help treat or restore Defendant.[13] Nor does the duration of Defendant's pre-hospitalization confinement bear any reasonable relation to its purpose. The purpose of the "pre-hospitalization commitment period . . . is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility." *United States v. Donnelly*, 41 F.4th 1102, 1106 (9th Cir. 2022). Some amount of delay is reasonable to serve this purpose, but certainly not over nine-months. *Calderon-Chavez*, 688 F.Supp.3d at 478 (collecting cases).

As the Government concedes, Defendant's pre-hospitalization delay violated his due process rights.[14] The Court also notes that this delay contributed significantly to Defendant's incarceration of over 21 months. Had these competency proceedings not been initiated to begin with, Defendant would only be facing six to twelve months if found guilty. But because of the unreasonable delay attributed to the Government, he has already spent nearly double the amount of time incarcerated than if this Court were to have sentenced him at the top his guideline range. *See* Pre-Plea Guideline Worksheet 6, ECF No. 34.

---

[13] *E.g., United States v. Leusogi*, No. 2:21-CR-32, 2022 WL 16855426, at *2 (D. Utah Nov. 10, 2022) (holding that "[c]ontinuing to incarcerate the [d]efendant for an indeterminate period, during which he is not receiving restorative treatment[,] is contrary to the Court's orders and the requirements of the IDRA.").

[14] "Under the *Calderon-Chavez* court's reasoning, Defendant's pre-hospitalization delay exceeding nine months would be considered a due process violation." Resp. 8, ECF No. 33.

B. Defendant's Rights Under the Speedy Trial Act Were Not Violated

Conversely, Defendants' speedy trial rights under the Sixth Amendment and the Speedy Trial Act were not violated. The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Speedy Trial Act gives effect to this right by setting specific deadlines for prosecution. *See* Speedy Trial Act of 1974, 18 U.S.C. § 3161(b–c). Individuals can allege violations of their speedy trial rights under either the Sixth Amendment, the Speedy Trial Act, or both.

In this case, Defendant only raised allegations his rights under the Speedy Trial Act were violated. As such, the Court declines to assess the merits of a constitutional speedy trial violation under *Barker v. Wingo*, 407 U.S. 514 (1992). While the Government advances the *Barker* test, the Court will not apply the test because Defendant failed to properly raise the issue in his Motion. *See generally* Mot. 6–8, ECF No. 30 (raising arguments only for a *statutory*, not Constitutional violation under the Speedy Trial Act); Resp. 9–12, ECF No. 33 (rebutting a constitutional violation under *Barker*, but not raising arguments against a statutory violation under the Speedy Trial Act). The Court will only proceed to determine whether Defendant has established his statutory rights under the Speedy Trial Act were violated. He has not.

Among the Speedy Trial Act's requirements is that "in any case in which a plea of not guilty is entered," a defendant's trial must "commence within seventy days" from his indictment or initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). The threshold question is therefore whether a defendant has entered a plea of not guilty. *See id.* Here, the Court need not assess excludable time under the act because Defendant did not enter a plea of not guilty in this

case. Defendant's counsel filed an unopposed motion for a psychiatric examination on October 3, 2025, just two days before Defendant's arraignment was set to take place[15]. *See* Mot. to Determine Mental Competency, ECF No. 15. Because Defendant never entered a plea of not guilty, the clock under 18 U.S.C. § 3161(c)(1) never started and there is no Speedy Trial Act violation.

### C. The Indictment Against Defendant is Dismissed with Prejudice

Upon finding a due process violation, the Government urges this Court to follow its sister courts' directive to find Defendant's due process violation moot because Defendant has since been admitted to a psychiatric treatment facility. *See* Resp. 8, ECF No. 33. This Court declines to do so. The Government alternatively asks this Court not to dismiss the indictment because dismissal is not the appropriate relief for this purported violation. Resp. 9, ECF No. 33. On the other hand, Defendant asks this Court to dismiss the indictment on for a violation of his due process rights, speedy trial rights, or for undue delay under Rule 48(b)(3). Mot. 7, ECF No. 30.

Rule 48(b)(3) empowers courts to dismiss an indictment if unnecessary delay occurs in bringing a defendant to trial. *See* FED. R. CRIM. P. 48(b)(3). "A district court has extremely broad discretion regarding whether to dismiss [an indictment] under Rule 48(b)." *United States v. Garcia*, 995 F.2d 556, 561 n.8 (5th Cir. 1993). "Inarguably the power of the court under [Rule] 48(b) includes *at least* a power to dismiss without prejudice because of delay not rising to the level of a constitutional violation." *U.S. v. Novelli*, 544 F.2d 800, 803 (5th Cir. 1977) (emphasis added). If the delay is caused by a constitutional violation, Rule 48(b) arguably "authorizes dismissal with prejudice for such a delay." *Id.* Here, the Court finds the Government's delay in transporting Defendant to a proper medical treatment facility following its Order of Commitment rises to the

---

[15] There was also not a waiver of arraignment filed with the Court.

level of a constitutional violation. The Court will hereby dismiss the indictment with prejudice for this due process violation and under Federal Rule of Criminal Procedure 48(b).

### D. Further Confinement of Defendant

Defendant opposed any extension of the treatment period under Section 4241(d)(2). Mot. 1, 4, ECF No. 30. The "Government agrees that a 90-day extension is not appropriate in this case." Resp. 3, ECF No. 33. Defendant nonetheless remained hospitalized at FMC Devens until at least March 12, 2025.[16] Because this Court determines Defendant's due process rights were violated and exercises its discretion to dismiss the indictment, the issues regarding extension of treatment under 18 U.S.C. § 4241(d)(2), or initiation of civil commitment proceedings under §§ 4246 and 4247 are moot.

## CONCLUSION

For the reasons stated above, the Court finds Defendant has met his burden to establish a due process violation for his pre-hospitalization delay following the Court's Order of Commitment, ECF No. 23. The Court further finds Defendant's rights under the Speedy Trial Act were not violated because a plea of not guilty was never entered, and the clock in 18 U.S.C. § 3161(c)(1) never started. Lastly, the Court notes the issue of ordering an additional commitment period under 18 U.S.C. §§ 4241(d)(2)(A), 4246, 4247 is now moot.

Accordingly, **IT IS THEREFORE ORDERED** that Defendant Dilan Evanny Pano-Flores' Motion Opposing Extension of Commitment and to Dismiss Indictment, ECF No. 30, is **GRANTED IN PART**.

---

[16] This is the deadline requested by FMC Devens. *See* Letter from FMC Devens, ECF No. 26.

**IT IS FURTHER ORDERED** Defendant Dilan Evanny Pano-Flores' "Indictment," ECF No. 9, is **DISMISSED WITH PREJUDICE**.

**IT IS FINALLY ORDERED** the United States Marshals Service **SHALL** coordinate the **RELEASE** of Defendant Dilan Evanny Pano-Flores.

**IT IS FINALLY ORDERED** Defendant Dilan Evanny Pano-Flores **SHALL BE RELEASED** no later than Monday, June 2, 2025.

SIGNED this __27th__ day of **May 2025**.

_____
**HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**